UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID A. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-00429-TWP-MJD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

David A. Johnson ("Johnson") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

### I. Background

Johnson filed an application for DIB on October 1, 2012, and an application for SSI on October 2, 2012. [Dkt. 14-2 at 20.] In both applications, Johnson alleged an onset of disability date of March 25, 2012. *Id*. Johnson alleges disability due fibromyalgia and degenerative disc disease.[1] [Dkt. 14-2 at 22-24.] Johnson's applications were initially denied on December 7, 2012, and denied again on March 8, 2013, upon reconsideration. [Dkt. 14-2 at 20.] Johnson

---

[1] Johnson and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 16 and Dkt. 22.] Because these facts involve Johnson's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

1

timely filed a written request for a hearing, which was held on November 5, 2013, before Administrative Law Judge Hortensia Haaversen ("ALJ"). [*Id*.] The ALJ issued a decision on May 30, 2014, again denying Johnson's application for SSI. [Dkt. 14-2 at 17.] On December 29, 2015, the Appeals Council denied Johnson's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 14-2 at 2.] Johnson timely filed his Complaint with this Court on February 23, 2016, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III.  The ALJ's Decision

The ALJ first determined that Johnson has not engaged in substantial gainful activity since March 25, 2012, the alleged onset date. [Dkt. 14-2 at 22.] At step two, the ALJ

3

determined that Johnson "has the following severe impairments: fibromyalgia and degenerative disc disease." *Id.* However, at step three, the ALJ found that Johnson does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 14-2 at 23.] In making this determination, the ALJ considered Listing 1.04 for Johnson's spine impairment, but found that the medical evidence did not support all criteria of that listing. *Id*. In lieu of a listing for fibromyalgia, the ALJ also considered Social Security Ruling 12-2p and found that Johnson's fibromyalgia does not equal any listing.

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). She concluded that Plaintiff had the RFC to perform the light work with the following restrictions:

> [H]e can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; he can stand and walk about 6 hours in an 8 hour day and sit 6 hours; he can occasionally balance, stoop, crouch, kneel, and climb stairs or ramps; and he can do no crawling and no climbing of ladders, scaffolds, or ropes.

[Dkt. 14-2 at 24] In finding these limitations, the ALJ considered Johnson's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*. The ALJ then acknowledged that the evidence presented could reasonably show that Johnson suffers from the symptoms he alleges, but she found his statements "not entirely credible." [Dkt. 14-2 at 25.] At step four, the ALJ concluded that Johnson is unable to perform any past relevant work, which included maintenance repair worker and medical data entry. [Dkt. 14-2 at 29.] The ALJ thus proceeded to step five, at which time she received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform jobs such as ticket taker, assembler and mail room clerk. Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [Dkt. 14-2 at 30.]

IV.  Discussion

Johnson asserts the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Johnson contends the ALJ erred when she: (1) failed to evaluate Johnson's impairments under Listing 11.14 (Peripheral Neuropathy); (2) improperly evaluated the opinion of Johnson's treating physician and a consultative examiner; and (3) assessed an RFC that is not supported by substantial evidence.

**A.  Listing 11.14**

Johnson first argues the ALJ erred by failing to evaluate his impairments, including his fibromyalgia diagnosis, under Listing 11.14 for Peripheral Neuropathy. Under the Social Security regulations, a claimant is eligible for disability benefits if she has an impairment or combination of impairments which meet or equal an impairment found in the Listing of Impairments. 20 C.F.R. pt. 404, subpart P, App. 1.  The claimant seeking disability benefits bears the burden of proving that her condition meets or equals a listed impairment. *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006).

The ALJ evaluated Johnson's spine impairments under Listing 1.04 and his fibromyalgia symptoms under Social Security Ruling 12-2p (as there is no listing for fibromyalgia), and determined the medical evidence did not support the criteria for any listing. Johnson does not dispute these findings. Instead, Johnson argues the ALJ should have also considered Listing 11.14 in her analysis and that her failure to do so requires remand. The Court disagrees. When an ALJ fails to cite *any* listed impairment and provides only a perfunctory analysis, there is little basis for meaningful judicial review and remand therefore may be required. *See Brindisi v. Barnhart,* 315 F.3d 783, 785–86 (7th Cir. 2003). But an ALJ's failure to explicitly refer to a

5

particular listing does not require automatic reversal, especially where, as here, the ALJ's thorough consideration of the claimant's impairments is apparent from the record.

Additionally, it is Johnson's burden to show he meets the criteria of Listing 11.14 and he has not done so here. Peripheral neuropathy requires a disorganization of motor function in two extremities resulting in "extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. 404, subpart P, App. 1, Listing 11.14. In the alternative, to meet the criteria for 11.14, a claimant must have marked limitation in both physical functioning and one of the following: 1.) understanding, remembering, or applying information; 2.) interacting with others; 3.) concentrating, persisting, or maintaining pace; or 4.) adapting or managing oneself. *See id.*

Johnson notes that an EMG showed he has a "minimal degree of peripheral sensorimotor polyneuropathy" [Dkt. 14-7 at 16] and that his treating physician, Dr. Nagarsenker, observed he has decreased strength (4/5) in his right hand and lower left extremity [Dkt. 14-7 at 24, 29] as well as difficulty balancing [Dkt. 14-8 at 44.] Yet, the ALJ noted each of these records in her analysis, as well as conflicting evidence, and determined Johnson did not meet or equal any listing. Additionally, as explained below, the ALJ reasonably discounted the weight of Dr. Nagarsenker's opinion based upon the inconsistencies between Johnson's testimony and the severity of the symptoms Johnson reported to Dr. Nagarsenker.

The Court cannot reweigh the evidence or substitute its own judgment for that of the Commissioner. "Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004). Johnson has pointed to no evidence that was either overlooked by the ALJ or that compels an analysis

6

under Listing 11.14. Therefore, the ALJ's step three analysis is supported by substantial evidence and the ALJ's failure to reference Listing 11.14 does not require remand.

### B. Evaluation of Medical Evidence

Johnson next argues the ALJ improperly weighted the opinions of his treating physician, Dr. Nagarsenker, and a consultative examiner, Dr. Gasiewicz. A treating physician's opinion is entitled to controlling weight as long as it is well supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). Because the ALJ declined to give Dr. Nagarsenker's opinion controlling weight, she was required to provide a sound explanation and good reasons for not doing so. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must consider various factors including the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(d)(2); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Johnson specifically asserts the ALJ failed to "expressly discuss, evaluate, or weigh" Dr. Nagarsenker's March 2013 opinion that Johnson's condition was "debilitating" and interfered with his functioning and concentration. [Dkt. 16 at 20-21.] In that opinion, Dr. Nagarsenker also noted that "I don't think he can have gainful employment and am surprised he has been denied disability." [Dkt. 14-8 at 44.] Contrary to Johnson's assertions, the ALJ extensively discussed this particular medical opinion by Dr. Nagarsenker. In fact, the ALJ dedicated two pages of her decision to Dr. Nagarsenker's medical evidence, including the March 2013 opinion, and contrasted the information Johnson relayed to Dr. Nagarsenker with the information Johnson testified to during his hearing. For example, the ALJ noted that Johnson reported to Dr.

7

Nagarsenker that he cannot stand for more than 20 minutes, uses shower rails and a cane, doesn't do any cooking or cleaning (wife does it all) and that he has days where he can't function. [Dkt. 14-2 at 29.]

Yet, Johnson testified that he mows the lawn, picks up sticks in the yard, changed the engine in his car and "does what he can" around the house since his wife is disabled. *Id*. The ALJ concluded that Johnson's "lack of candor with his treating physician has no doubt colored her opinion." *Id*. These inconsistencies, together with a consultative physician's finding that Johnson was a malingerer, support the ALJ's decision to assess Dr. Nagarsenker's opinion of disability little weight.[3] The Court finds this to be an adequate explanation of the ALJ's decision to not give controlling weight to Dr. Nagarsenker's opinion.

Johnson also argues the ALJ erroneously attributed "significant weight" to the opinion of the consultative examiner, Dr. Gasiewicz, who found Johnson to be a malingerer based upon his response to the Romberg test and observations during the examination. Dr. Gasiewicz noted that Johnson was able to perform "perfectly normal movements like walking, sitting squatting, bending, hand movements, manipulative movements with hands and feet, able to grasp objects and able to get on/off the table without assistance." [Dkt. 14-7 at 90.] Dr. Gasiewicz also observed that the medical history Johnson reported was "confusing . . . I am not sure if he understands his history or is embellishing what he can. His Romberg indicates that he is acting, it is not a normal response or an abnormal, it is a classical response of a malingerer." [Dkt. 14-7 at 90-91.] The ALJ placed great weight on Dr. Gasiewicz's opinion because he had the opportunity

---

[3] While Johnson targets the March 2013 opinion as being improperly weighted, the ALJ only specifically grants "little weight" to Dr. Nagarsenker's December 2011 opinion that Johnson would miss more than four days of work per month and was capable of less than sedentary work. However, the ALJ focused on the same issue with regard to both opinions: Dr. Nagarsenker's implication of disability was inconsistent with other medical evidence in the record and there was evidence Johnson had not been honest with Dr. Nagarsenker about his symptoms.

to review Johnson's medical records and observe/interact with him in person. [Dkt. 14-2 at 28.] Johnson disputes this opinion because Dr. Gasiewicz did not have the results of Johnson's MRI or EMG, which showed "mild degenerative disc disease" and "a minimal degree of peripheral sensorimotor polyneuropathy." [Dkt. 14-7 at 94.] However, what is missing from Johnson's argument is an explanation as to why these test results would change Dr. Gasiewicz's opinion. Neither of the tests showed significant abnormalities. Moreover, Dr. Gasiewicz's opinion that Johnson was a malingerer was grounded in observations made during the examination: Johnson performed "perfectly normal movements," yet appeared to embellish his medical history and his Romberg response indicated he was acting. These first hand observations are valid even in the absence of a review of the mildly abnormal MRI and EMG. Therefore, the Court finds that the ALJ's decision to give Dr. Gasiewicz's opinion significant weight is supported by substantial evidence.

### C. RFC Assessment

In Johnson's final argument for remand, he asserts the RFC assigned by the ALJ is not supported by substantial evidence. The RFC represents the maximum a person can do—despite his limitations—on a "regular and continuing basis," which means roughly eight hours a day for five days a week. S.S.R. 96-8p. Johnson disputes the portion of the RFC that requires him to stand or walk for six hours and the omission of any manipulative or mental limitations. [Dkt. 16 at 25.] Johnson asserts the ALJ ignored portions of Dr. Nagarsenker's treatment notes that indicated Johnson has significant difficulty walking or standing and occasionally needs an assistive device for balance. However, as discussed above, the Court has already found that substantial evidence supports the ALJ's decision to give Dr. Nagarsenker's opinion little weight while crediting Dr. Gasiewicz's opinion that Johnson could perform normal movements without

an assistive device, including manipulative movements. The RFC is consistent with Dr. Gasiewicz's opinion of Johnson's capabilities.

Johnson intertwines his RFC argument with an attack on the ALJ's credibility finding, asserting that the ALJ should not have considered Johnson's sporadic medical treatment or daily activities when determining his credibility. SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3. While a plaintiff's claims cannot be rejected solely because they are not supported by objective evidence, 20 C.F.R. § 404.1529(c)(2), the ALJ may take that fact into consideration, since "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue,* 539 F.3d 473, 483 (7th Cir. 2008).

Here, Johnson argues the ALJ should not have equated his ability to perform certain daily life activities with the ability to perform a limited range of light work on a full-time basis. It is true that the Seventh Circuit has cautioned ALJs about equating the ability to engage in some daily activities with an ability to work full-time because daily activities allow for flexible scheduling and assistance from others, and do not require a minimum standard of performance. *See Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014), and cases cited therein. However, here the ALJ did not improperly equate Johnson's activities with an ability to work full-time. Rather, she said that his activities *contradict his alleged limitations*. Specifically, the ALJ noted that Johnson's "specific and varied activities of daily living are inconsistent with his complaints to his treating physician that he cannot do anything at all." [Dkt. 14-2 at 26.] This inconsistency,

together with Dr. Gasiewicz's conclusion that Johnson was a malingerer, support the ALJ's adverse credibility finding therefore Johnson has not demonstrated it was "patently wrong."

Johnson has pointed to no evidence undermining the ALJ's RFC assessment.  Therefore, the ALJ built an "accurate and logical bridge" from the evidence to her conclusions, *see Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir.2008), and the Court is satisfied that the ALJ's decision is supported by substantial evidence.

## V.     Conclusion

The standard for disability claims under the Social Security Act is stringent.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's.  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The Court must uphold a decision where, as here, it is supported by substantial evidence in the record.  As the Court cannot find a legal basis to overturn the ALJ's determination that Johnson does not qualify for disability benefits, the undersigned recommends the Commissioner's decision be **AFFIRMED**.


### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by

the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Dated:  02 DEC 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov