UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID A. JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:16-cv-00429-TWP-MJD ) |
| NANCY A. BERRYHILL[1], Acting Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) ) ) |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION AS MODIFIED**

Plaintiff David Johnson ("Mr. Johnson") appeals the Administrative Law Judge's decision denying his application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636, the Court referred the matter to the Magistrate Judge, who submitted his Report and Recommendation on December 2, 2016, recommending that the decision of the Defendant Commissioner of the Social Security Administration ("the Commissioner") be affirmed. (Filing No. 26.) Mr. Johnson timely filed objections to the Magistrate Judge's Report and Recommendation (Filing No. 27), and the Commissioner did not file a response. For the reasons set forth below, the Court **OVERRULES** Mr. Johnson's objections and **ADOPTS** the Magistrate Judge's Report and Recommendation **AS MODIFIED**, **AFFIRMING** the decision of the Commissioner.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25 (d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. BACKGROUND

## A. Procedural History.

Mr. Johnson filed an application for Disability Insurance Benefits on October 1, 2012, and an application for Supplemental Security Income on October 2, 2012, alleging an onset of disability date of March 25, 2012. (Filing No. 14-2 at 20.) Mr. Johnson alleges disability due to fibromyalgia and degenerative disc disease. (Filing No. 14-2 at 22-24.) His applications were denied initially and upon reconsideration. (Filing No. 14-2 at 20.) Mr. Johnson filed a timely written request for a hearing, which was held on November 5, 2013 before Administrative Law Judge Hortensia Haaversen ("the ALJ"). (Filing No. 14-2 at 20.) The ALJ issued a decision on May 30, 2014, denying the application. (Filing No. 14-2 at 17.) Thereafter, the Appeals Council denied Mr. Johnson's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Filing No. 14-2 at 2.) Mr. Johnson timely filed an appeal with this Court on February 23, 2016. (Filing No. 16.)

On November 18, 2016, the undersigned referred this case to Magistrate Judge Mark J. Dinsmore for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Filing No. 25.) On December 2, 2016, the Magistrate Judge filed his Report and Recommendation (Filing No. 26) and on December 16, 2016, Mr. Johnson filed an Objection. (Filing No. 27.)

## B. Relevant Medical History.

A few specific elements of Mr. Johnson's medical history are relevant here, and the Court limits its discussion to those. Mr. Johnson saw his treating physician, Dr. Varsha Nagarsenker, on a number of occasions during the relevant time period. On May 31, 2011, Mr. Johnson complained of back pain, joint pain, swelling, weakness, and paresthesias. (Filing No. 14-7 at 297.) Dr. Nagarsenker observed weakness in several extremities, paraspinal tenderness, cervical spine

spasm, and severe tenderness in the cervical and lumbar spine. (Filing No. 14-7 at 297.) On August 31, 2011, Mr. Johnson again saw Dr. Nagarsenker, and complained of fatigue, pain, joint swelling, muscle cramps, stiffness, and paresthesias. (Filing No. 14-7 at 295.) He reported that on bad days, he could not sit for more than five or ten minutes at a time without having to change positions. (Filing No. 14-7 at 295.) Dr. Nagarsenker noted paraspinal tenderness and spasms in the spine, grip strength of 4/5, and some difficulty balancing. (Filing No. 14-7 at 295.)

Mr. Johnson saw consultative examiner Dr. Wallace Gasiewicz on November 27, 2012. Dr. Gasiewicz reviewed the medical documentation provided by the Social Security Administration and performed a physical examination of Mr. Johnson. (Filing No. 14-7 at 88.) Dr. Gasiewicz recorded that Mr. Johnson self-reported that an "EMG showed polyneuropathy" and that an "MRI showed white matter abnormalities." (Filing No. 14-7 at 88.) Dr. Gasiewicz found that "[m]uscle strength and tone are normal," and that "[g]rip strength was normal at 5/5 bilaterally." (Filing No. 14-7 at 90.) He found that Mr. Johnson had "the ability to pick up a coin and button a shirt." (Filing No. 14-7 at 90.) He concluded that although Mr. Johnson presented using a cane, "[c]linical evidence does not support use of an ambulatory aid." (Filing No. 14-7 at 90.) He concluded that Mr. Johnson's "Romberg [test] indicates that he is acting…it is a classical response of a malingerer." (Filing No. 14-7 at 90-91.) Dr. Gasiewicz also stated that he "[has] no laboratory evidence of any muscle or nerve disease," and that he "would like to see his alleged positive EMG and MRI." (Filing No. 14-7 at 91.) Dr. Gasiewicz also stated that he was "not sure if [Mr. Johnson] understands his history or is embellishing what he can." (Filing No. 14-7 at 90.)

Mr. Johnson again visited Dr. Nagarsenker in March of 2013. He complained of constant pain all over, that certain days were worse than others, and that he was "dysfunctional" on bad days. (Filing No. 14-8 at 398.) He reported that he could not cook or clean, so his wife "did

3

everything." (Filing No. 14-8 at 398.) He stated that his wife had to help him button his clothes and tie his shoes. (Filing No. 14-8 at 398-99.) Mr. Johnson also reported that he could not sit for longer than 20 minutes and could not stand for more than 10 minutes. (Filing No. 14-8 at 398.) Dr. Nagarsenker observed decreased range of motion in Mr. Johnson's right and left shoulders, left ankle, and back. (Filing No. 14-8 at 399.) She also observed decreased strength in the right and left hip and back spasms. (Filing No. 14-8 at 399.) In her treatment notes, she stated, "I don't think he can have gainful employment and am surprised he has been denied disability." (Filing No. 14-8 at 399.)

Mr. Johnson testified at his disability hearing. He testified that he lives with his wife, who is disabled, and his elderly mother. (Filing No. 14-2 at 74.) He stated that, regarding outdoor work at his home, "I do what gets done," including mowing the lawn with a riding lawnmower and picking up sticks. (Filing No. 14-2 at 75; Filing No. 14-2 at 87.) He also stated that he helps around the house by folding laundry and changing lightbulbs. (Filing No. 14-2 at 76.) He testified that he works on cars when he is able. (Filing No. 14-2 at 88.)

C.  **The ALJ's Decision.**

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Mr. Johnson is not disabled. (Filing No. 14-2 at 31.) At step one of the analysis, the ALJ found that Mr. Johnson meets the insured status requirements of the Act through June 30, 2013 and has not engaged in substantial gainful activity[2] since his amended alleged onset date of May 25, 2012. (Filing No. 14-2 at 22.) At step two of the analysis, the ALJ found that Mr. Johnson has the following severe impairments:

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

fibromyalgia and degenerative disc disease of the cervical spine status post prior fusion. ([Filing No. 14-2 at 22](#).)

At step three, the ALJ found that Mr. Johnson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. ([Filing No. 14-2 at 23](#).) The ALJ considered various listings, but ultimately found that Mr. Johnson did not meet any of them. ([Filing No. 14-2 at 23](#).) After step three but before step four, the ALJ found that Mr. Johnson has the Residual Functional Capacity ("RFC") to work as follows:

> …perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that: he can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; he can stand and walk about 6 hours in an 8 hour day and sit 6 hours; he can occasionally balance, stoop, crouch, kneel, and climb stairs or ramps, and he can do no crawling and no climbing of ladders, scaffolds or ropes…

([Filing No. 14-2 at 24](#).) In making his RFC determination, the ALJ stated that he was placing significant weight on the opinion of Dr. Gasiewicz, and little weight on the opinion of Dr. Nagarsenker. ([Filing No. 14-2 at 28-29](#).)

At step four of the analysis, the ALJ concluded that Mr. Johnson was not capable of performing any of his past relevant work. ([Filing No. 14-2 at 29](#).) At step five, the ALJ concluded that there are other jobs existing in the national economy that Mr. Johnson is able to perform, specifically as a ticket taker, assembler, and mail room clerk. ([Filing No. 14-2 at 30](#).) Based on these findings, the ALJ concluded that Mr. Johnson is not disabled as defined by the Social Security Act, and is therefore not entitled to the requested disability benefits. ([Filing No. 14-2 at 31](#).)

## II. LEGAL STANDARD

When a court reviews the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and

no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision, and while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning ... [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon,* 270 F.3d at 1176. The court "must be able to trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford v. Apfel,* 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. *See* Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions ... to which timely objections have not been raised by a party." *Sweet v. Colvin,* 2013 WL 5487358 at [ ] (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 759-61 (7th Cir. 2009)).

### III. DISCUSSION

Mr. Johnson raises two objections to the Magistrate Judge's Report and Recommendation: (1) that the Magistrate Judge applied an incorrect regulatory standard with respect to Listing 11.14;

6

and (2) that the Magistrate Judge improperly emphasized the opinion of the consultative physician. (Filing No. 27.)

**A.    Listing 11.14.**

In his brief in support of judicial review of the Commissioner's decision, Mr. Johnson argues that the ALJ's finding that Mr. Johnson did not meet Listing 11.14 is not supported by substantial evidence or the relevant legal standard. (Filing No. 16 at 17.) He contends that the ALJ's failure to explicitly consider Listing 11.14 for Peripheral Neuropathy mandates reversal, because it constitutes a "perfunctory finding" that is "devoid of any analysis that enables meaningful review" of the ALJ's decision. (Filing No. 16 at 19.) The Magistrate Judge concluded that an ALJ's failure to consider a particular Listing does not require automatic reversal, particularly where the ALJ's consideration of the claimant's impairments is apparent from the record. (Filing No. 26 at 5-7.) The Magistrate Judge also concluded that Mr. Johnson has not met his burden to demonstrate that he meets the criteria of Listing 11.14. (Filing No. 26 at 5-7.) Mr. Johnson challenges both of those findings.

This Court agrees with the Magistrate Judge's assessment. An ALJ's "failure to explicitly refer to a particular listing does not require automatic reversal." *Zatz v. Astrue*, 346 F. App'x 107, 110 (7th Cir. 2009). While the ALJ here did not explicitly refer to Listing 11.14, she addressed each of the symptoms that Mr. Johnson points to as supporting a finding under that Listing. She noted his "minimal degree of peripheral sensorimotor polyneuropathy," (Filing No. 14-2 at 25, citing Filing No. 14-7 at 16), and that Dr. Nagarsenker observed decreased strength in his right hand and lower left extremity, (Filing No. 14-2 at 29, citing Filing No. 14-7 at 24-29). She also noted his difficulty balancing. (Filing No. 14-2 at 27.)

However, the ALJ also noted the conflicting evidence that pointed away from a finding that Mr. Johnson met or equaled a Listing. (Filing No. 14-2 at 26-29.) She thoroughly explained that she was discounting the opinion of Dr. Nagarsenker—the source of much of Mr. Johnson's cited evidence—because of the inconsistencies between Mr. Johnson's testimony and the severity of the symptoms reported to Dr. Nagarsenker. (Filing No. 14-2 at 28-29.) It is clear from the ALJ's decision that she adequately considered the record evidence cited by Mr. Johnson, even though she did not explicitly refer to Listing 11.14.

Next, the Magistrate Judge concluded that, in any event, Mr. Johnson has not met his burden to establish that he meets the requirements of Listing 11.14. In his Objection, Mr. Johnson argues that the Magistrate Judge cited the wrong regulatory standard for Listing 11.14 when he concluded that Mr. Johnson did not meet his burden. (Filing No. 27 at 1-2.) Mr. Johnson points out that the Magistrate Judge referred to a version of Listing 11.14 that was enacted after Mr. Johnson's hearing, and that the version of the Listing that was in place at the time of the hearing should instead apply. (Filing No. 27 at 1-2.)

Mr. Johnson is correct in asserting that the version of Listing 11.14 that was in effect at the time of his hearing should apply. *See, e.g., Keys v. Barnhart,* 347 F.3d 990, 994 (7th Cir. 2003). That Listing applies to peripheral neuropathies "[w]ith disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (as amended). And Listing 11.04B, cross-referenced in Listing 11.14, requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (as amended).

8

Applying the correct regulatory standard, this Court reaches the same conclusion as that reached by the Magistrate Judge—that Mr. Johnson has not met his burden to prove that he meets the criteria of Listing 11.14. As discussed by the Magistrate Judge, Mr. Johnson has pointed to no evidence that was overlooked by the ALJ or compels a finding under Listing 11.14. In his Objection, Mr. Johnson points to his use of a cane as implicating Listing 11.14. (Filing No. 27 at 2.) However, the ALJ sufficiently addressed Mr. Johnson's prescription for a cane, which she noted several times was made "only on the day before the hearing", and without any physical examination (Filing No. 14-2 at 24) (emphasis in original).

The Court concludes that the ALJ's analysis at Step Three is supported by substantial evidence, and the lack of reference to Listing 11.14 does not require remand.

**B.** **Opinions of Treating and Consultative Physicians.**

Mr. Johnson raises a second objection to the Magistrate Judge's Report and Recommendation, but his objection is not entirely clear. He appears to argue that the Magistrate Judge and the ALJ both erroneously discount the opinion of Dr. Nagarsenker, and they assign too much weight to the opinion of Dr. Gasiewicz.[3] (Filing No. 27 at 2-3.)

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004).

---

[3] To the extent that Mr. Johnson is instead raising a challenge to the ALJ's credibility finding, the Court concludes that his argument is undeveloped. In any event, as will be described in Part B, the Court concludes that substantial evidence supports the ALJ's assignment of "significant weight" to Dr. Gasiewicz's opinion. In that opinion, Dr. Gasiewicz states that Mr. Johnson exhibits the classic signs of a malingerer. The ALJ based her credibility determination, at least in part, on that finding. This Court will only overturn a credibility finding if it is patently wrong, *Devitt v. Barnhart,* 149 F. App'x 498, 502 (7th Cir. 2005), and given the finding credited by the ALJ that Mr. Johnson was malingering, we cannot conclude that the ALJ was patently wrong.

The ALJ assigned "little weight" to Dr. Nagarsenker's December 2011 opinion, finding that it is not consistent with the medical evidence of record, including Dr. Nagarsenker's own treatment notes. (Filing No. 14-2 at 28-29.) Mr. Johnson does not take issue with this finding. Instead, he argues that the ALJ failed to properly consider and evaluate Dr. Nagarsenker's opinion from Mr. Johnson's March 2013 visit. (Filing No. 16 at 20.) The Court disagrees.

The ALJ devoted nearly half of a page of her decision to discussing that particular opinion and whether it was consistent with substantial evidence in the record. The ALJ stated that during this March visit, Dr. Nagarsenker noted that "[Mr. Johnson's] condition appeared to be debilitating and she was surprised that he had been denied disability." (Filing No. 14-2 at 27.) The ALJ pointed out that during this same visit, Mr. Johnson stated that his disabled wife "helps him button clothing and tie his shoes" and that "his wife does everything." (Filing No. 14-2 at 27.) The ALJ also considered that Mr. Johnson told Dr. Nagarsenker that "he cannot sit for more than 20 minutes and cannot stand for more than 10 minutes at a time," but that he testified at his hearing "that he keeps the lawn mowed and keeps the sticks picked up in the yard." (Filing No. 14-2 at 27.) The ALJ also noted that another physician mentioned suspicion that Mr. Johnson was malingering. (Filing No. 14-2 at 27.)

Prior to making her findings regarding what weight to assign Dr. Nagarsenker's opinions, the ALJ stated that she:

> does not feel that the claimant is being honest with his treating physician. Although the claimant routinely tells Dr. Nagarsenker he does not do anything, at the hearing, he stated that his wife is disabled and he helps out when he can and in fact stated that he 'does what gets done' around the house; he does outdoor work including mowing on a riding lawn mower and picking up sticks, and he has also worked on an engine. The claimant's lack of candor with his treating physician has no doubt colored her opinion, and the [ALJ] has considered this factor in weighing the treating physician's opinion as will be further discussed below.

10

(Filing No. 14-2 at 25.) Mr. Johnson argues that the ALJ mischaracterizes the record in making these findings, because the ALJ did not explicitly consider the rest of Dr. Nagarsenker's March 2013 treatment notes.

The Court does not find that the ALJ's findings mischaracterize the record. The ALJ did not specifically mention that the treatment notes indicate that Mr. Johnson has pain that is "some days worse than others," or that "on good days when he does move, then he is down for 2 days d/t increased pain." However, the ALJ notes elsewhere that Mr. Johnson stated that "he has good days when he gets a lot done and then other days that he does not." (Filing No. 14-2 at 24.) The ALJ also notes elsewhere that Mr. Johnson had difficulty balancing, (Filing No. 14-2 at 27), as indicated in the treatment notes.

An ALJ need not specifically address every piece of evidence, but she must articulate a legitimate reason for her decision. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ adequately articulated her reasons for assigning Dr. Nagarsenker's opinion little weight, including that Mr. Johnson's hearing testimony conflicted with his statements to Dr. Nagarsenker, and that Dr. Gasiewicz concluded that Mr. Johnson exhibited the "classic[] response of a malingerer." (Filing No. 14-7 at 90-91.) The Court concludes that substantial evidence supports the ALJ's conclusions that Dr. Nagarsenker's opinions were not entitled to controlling weight, and would be given "little weight".

Mr. Johnson also argues that the Magistrate Judge and the ALJ erred in assigning "significant weight" to the opinion of consultative examiner Dr. Gasiewicz, the doctor who concluded that Mr. Johnson was a malingerer based on his physical examination. (Filing No. 27 at 2-3.) Mr. Johnson asserts that Dr. Gasiewicz's medical conclusions are suspect, and therefore that his opinion is not entitled to significant weight. Mr. Johnson takes issue with the following

two findings in Dr. Gasiewicz's report: (1) "I have no laboratory evidence of any muscle or nerve disease. I would like to see his alleged positive EMG and MRI;" and (2) "with the medical records available to me, I can find no diagnosis for his complaints of weakness and pain all over." ([Filing No. 16 at 24](), citing [Filing No. 14-7]().) Mr. Johnson argues that the "examiner's conclusions are problematic because fibromyalgia often does not create significant physical findings and it is a diagnosis based in the exclusion of other causes for symptoms." ([Filing No. 16 at 24]().)

The Court notes, however, that nowhere in his report did Dr. Gasiewicz indicate that the MRI and EMG tests were discussed as relevant, or exclusively relevant, to a diagnosis of fibromyalgia. In fact, as listed on the report, Mr. Johnson stated that the EMG test, "showed polyneuropathy," and the MRI "showed white matter abnormalities." ([Filing No. 14-7 at 88]().) Mr. Johnson's objection suggests that he assumes that all of the statements in Dr. Gasiewicz's report refer to a diagnosis (or lack thereof) for fibromyalgia, but the report itself makes clear that Dr. Gasiewicz was concerned with any nerve and muscle abnormalities that might explain Mr. Johnson's complaints of "weakness and pain all over." ([Filing No. 14-7 at 91]().) Moreover, polyneuropathy (as referenced relative to the EMG) would be relevant to a diagnosis implicating Listing 11.14, regarding peripheral neuropathies.

Mr. Johnson also argues that Dr. Gasiewicz's opinion is undermined by the "significant, objective abnormalities which were present during Dr. Nagarsenker's March 2013 examination." ([Filing No. 16 at 24]().) While Mr. Johnson does not point to what those objective abnormalities are, Dr. Nagarsenker's treatment notes indicate "decreased range of motion and tenderness" in some of Mr. Johnson's extremities, "decreased strength and tenderness" in others, and "decreased range of motion, tenderness, and spasm" in his back. ([Filing No. 14-8 at 7]().) However, as noted above, the ALJ also concluded that Dr. Nagarsenker's findings were not consistent with the record as a

12

whole, and that the severity of Mr. Johnson's symptoms, as he reported them to Dr. Nagarsenker, did not match his hearing testimony.

And finally, Dr. Gasiewicz performed both a review of Mr. Johnson's medical records and a physical examination. Dr. Gasiewicz performed the Romberg test and concluded that Mr. Johnson was malingering. He noted that Mr. Johnson could perform "perfectly normal movements like walking, sitting, squatting, bending, hand movements, manipulative movements with hands and feet." (Filing No. 14-7 at 90.) He also found that Mr. Johnson was able to button his shirt—a task that Mr. Johnson told Dr. Nagarsenker he had to have his wife complete. (Filing No. 14-7 at 90.) Dr. Gasiewicz also noted that the medical history reported by Mr. Johnson was "confusing…I am not sure if he understands his history or is embellishing what he can." (Filing No. 14-7 at 90.)

Given all of these findings, substantial evidence supports the ALJ's assignment of "significant weight" to Dr. Gasiewicz's opinion.

## IV. CONCLUSION

For the reasons described above, the Court **OVERRULES** Mr. Johnson's Objection and **ADOPTS** the Magistrate Judge's Report and Recommendation **AS MODIFIED**, **AFFIRMING** the decision of the Commissioner.

**SO ORDERED.**

Date: 3/1/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov